IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


ROSEANN SAVEDRA,

       Plaintiff,

v.                                                            CIV 03-240 KBM

JO ANNE B. BARNHART,
Commissioner of Social Security,

       Defendant.


# MEMORANDUM OPINION AND ORDER

## I.  Background

Plaintiff Roseann Savedra filed for benefits in 1999 soon after suffering a back injury while moving a table at her job as a custodian for a school.  She asserted the back injury, diabetes and depression as disabling conditions.  The first ALJ assigned to the matter found Savedra unable to return to her position as a custodian, but able to perform a full range of sedentary unskilled work, and therefore found Plaintiff not disabled under Medical-Vocational Rule 201.27.  *E.g.,* *Administrative Record* ("*Record*") at 12-16, 60-62, 74.

In a separate case in this district, Plaintiff sought review of the first ALJ's decision.  The court did not reach a decision on the merits.  Instead, the parties agreed to a remand, outlining the areas of deficiencies in the first decision that required further consideration and explication.  *See* *Savedra v. Barnhart,* CIV 01-800 MV/LFG (*Doc. 11,* remand order entered 3/27/02); *see also* *Record* at 251-52.  The Appeals Council thereafter vacated its prior final decision and remanded

the matter.  *Record* at 253.

On remand, Administrative Law Judge ("ALJ") David R. Wurm presided over the matter. He considered additional evidence, held another hearing, and issued a thorough opinion on January 24, 2003.  He found that Plaintiff has the residual functional capacity to do light work with certain restrictions which include limited contact with the public.  With the assistance of a vocational expert, he found Plaintiff not disabled at Step 4 because she could return to work she had done more than fifteen years ago as a "food checker."  *See Record* at 239, 241.  Plaintiff did not file exceptions with the Appeals Council, nor did it assume jurisdiction without exceptions being filed.  Therefore, ALJ Wurm's January 24, 2003 decision became the final agency decision, and this Court has jurisdiction to review the matter.  *E.g., Miller v. Barnhart,* 43 Fed. Appx. 200, 203 (2002); 20 C.F.R. § 404.984(a).

This matter is before the Court on Plaintiff's Motion to Reverse or Remand, where she raises interrelated claims concerning ALJ Wurm's Step 4 analysis.  *See Docs. 10, 11.*  Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment.  If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief.  *E.g., Hamilton v. Sec'y of Health & Human Servs.,* 961 F.2d 1495, 1497-1500 (10th Cir. 1992).  My assessment is based on a review of the entire record, where I can neither reweigh the evidence nor substitute my judgment for that of the agency.  *E.g., Casias v. Sec'y of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991).  Having read and carefully considered the entire record, I find that Plaintiff's motion should be granted in part and the matter remanded to the Commissioner for further proceedings.

## II.  Pertinent Portions Of Administrative Record

### A.  Mental Impairment

At the hearing, Plaintiff testified that she "gets along" with people in the grocery store when she goes shopping and does not have a history of fighting with people.  *Record* at 509.  As for her panic attacks, Savedra testified that being "around a lot of people" or "loud noise" or "traffic" triggers an attack and that they last "just a few minutes."  *Id.* at 510.  She told ALJ Wurm that she suffers from a panic attack about "once a month."  *Id.* at 511.  As to the Plaintiff's mental impairment, ALJ Wurm found that:

> The claimant has complained of depression and anxiety since her back injury.  However, although she initially stated that those problems were related to her injury, she later stated that she has always been depressed, and that she suspects that her symptoms are related to menopause.  Her treating psychiatrist, who witnessed an "anxiety attack" in his office on July 13, 2001, stated that it appeared her symptoms may be attributable to menopausal hot flashes (Exhibit 17F).  The claimant has inconsistently reported three or four panic attacks a week, two to three panic attacks a week, very few panic attacks, one panic attack a month, and five to six anxiety attacks a month, all within a period of a few months during 2001 (Exhibit 17F).  Her treating psychiatrist has characterized her condition as "very much improved," "improving," "under control," "doing quite well," "not seriously depressed," or "minimally depressed" over the same period. (Exhibit 17F).  On September 7, 2001[,] the claimant's psychiatrist wrote that her mood was not changed much, and that she was only minimally depressed.  That statement indicated the doctor's opinion that the claimant has always had minimal depression.

*Id.* at 238-39.

In evaluating Plaintiff's residual functional capacity vis-a-vis her alleged mental impairments, ALJ Wurm again discussed and referenced his findings quoted above.  He noted that the consultative psychiatric evaluation of Plaintiff "made few findings of significant symptoms

or functional difficulties, and the doctor observed only slight depression.  While he stated that the

claimant was capable of simple, repetitive work activities, he did not restrict her to such work,

and he stated that her handicap is physical in nature."  *Id.* at 240. ALJ Wurm further found that:

> The claimant testified that she continues to have crying spells,
> fatigue, decreased energy, and anxiety.  However, she stated that
> her mental condition is improved, and she did not describe any
> particular work[-]related function she was unable to perform.  She
> shops, cleans house and does laundry with the help of her husband.
> She does not allege any difficulties performing her daily activities,
> concentrating, or tolerating stress.  Although she stated that she
> becomes anxious around crowds of people, she stated that this is a
> problem only about once a month, and it lasts only for a minute.
> She did not describe any problem going out to shop in stores. . . .
>
> I am aware that the claimant's treating psychiatrist has given his
> opinion that the claimant is unable to work at this time (Exhibit
> 21F).  However, this is the first time the doctor has given any
> opinion that the claimant experiences any work[-]related
> difficulties, and his opinion is restricted to the claimant's condition
> "at this time," and does not refer to her condition overall during the
> period under review.  As such, it is of limited help to me in my
> assessment of the claimant's overall mental functioning during the
> period of review, and I accord it significant weight only as to the
> time period of October 2002, when it was rendered.  I note that an
> opinion of disability would be quite inconsistent with the doctor's
> own comments in his treatment notes, and with the claimant's
> reports and testimony of mild and improving symptoms.

*Id.* at 240-41.

Although ALJ Wurm's thorough and accurate discussion of Plaintiff's mental health

records indicated that her depression and panic attacks were minimal and did not significantly

impede her ability to work, he gave Plaintiff the "benefit of the doubt" and found that she

experiences moderate limitations of her social functioning, and that she can tolerate only limited

contact with the public."  *Id.* at 241.

4

### B.  Past Relevant Work As "Food Checker"

When ALJ Wurm questioned Plaintiff about the nature of her work as a "food service worker," Plaintiff explained that she worked at a student "canteen" where she made salads and cashiered.  *Id.* at 514.  The vocational expert characterized the "canteen" job as "two separate jobs" with the cashiering aspect being "semi-skilled, sedentary."  *Id.* at 515; *see also id.* at 517 ("it's a sedentary position at the cashier, you know[,] cashiering sitting on a stool or chair").  ALJ Wurm gave the vocational expert a hypothetical that included the limitation of "moderately limited in working with the public, interaction with the public," and asked the vocational expert if Plaintiff could perform any of her past work with that limitation.  *Id.* at 515.  The vocational expert testified that Plaintiff could perform the cashier aspect of the food checker job because "[t]here is some public contact but you're only taking money, it's a limited contact and the purpose is not to sell anything to them."  *Id.* at 516.

In concluding that Plaintiff could return to past relevant work as a cashier, ALJ Wurm reasoned as follows:

> During the period under review the claimant has been able to perform a category of her past relevant work.  A vocational expert appeared and testified at the hearing before me held on August 9, 2002.  In response to my hypothetical question to her, the vocational expert stated that the claimant's past relevant work in the food service industry included a job as a food checker.  She gave her opinion that the job was light in nature, that it did not require any climbing or more than just occasional postural position, that it did not involve[] working at temperature extremes or in hazardous conditions, and that it involved only limited public contact.  I accept the testimony of the vocational expert and find that the claimant has been able to return to her past relevant work as a food checker.
>
> I am aware that the claimant last performed that job in August

> 1986, and that more than 15 years have therefore elapsed since that
> time. However, the regulation at 20 CFR 404.15[6]5 provides that,
> although the Administrative Law Judge will usually not consider
> work performed more than 15 years prior to adjudication, that rule
> is meant as [a] guide to ensure that changes in the job marked do
> not cause significant changes in the job duties such that the
> individual is no longer able to perform them. The claimant's past
> job as a food checker was a relatively generic job which has
> remained essentially unchanged. Therefore, she should not
> experience difficulties due to new and unfamiliar work practices, or
> difficulties remembering the job duties.

*Id.* at 241.

## III. Analysis

The Step 4 analysis consists of three phases, and Plaintiff asserts that ALJ erred at each

phase. Savedra further argues that the ALJ could not consider the cashier work as past relevant

work. I begin my analysis assuming that the cashier position so qualifies.

### A. *ALJ Wurm's RFC Finding Is Supported By Substantial Evidence*

Plaintiff argues that ALJ Wurm erred in his residual functional capacity ("RFC") finding

that she could function under limited contact with the public. She cites her 1999 diagnoses that

included agoraphobia and a personality disorder and her Global Assessment of Functioning

("GAF") scores of 50 in 1999 and 40 in 2000 and the opinion of her psychiatrist that as of

October 2002 she was not capable of holding a job. *See Doc. 11* at 5-6.

As I understand it, Plaintiff argues that her mental impairments result in a residual

functional capacity that precludes her from interacting with the public in any capacity. I disagree,

however, that the ALJ erred in this first phase of his Step 4 analysis. *See e.g., Doyal v. Barnhart,*

331 F.3d 758, 760 (10th Cir. 2003) ("In [*Winfrey v. Chater,* 92 F.3d 1017, 1023 (10th Cir. 1996)]

we noted the three phases of evaluation the ALJ must complete as part of step four of the

sequential analysis: 'In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity.'").

As set forth in detail above, it is plain that ALJ Wurm reviewed all of the evidence concerning Plaintiff's mental impairments. The licensed professional clinical counselor who assessed the November 1999 GAF score of 50 did not evaluate Plaintiff with any work restrictions. *See Record* at 144-164. The consulting psychiatrist, who examined Plaintiff in March 2000, found Plaintiff can work. *See id.* at 165-167. ALJ Wurm's repeated references to "Exhibit 17F" throughout his opinion demonstrate that he reviewed the November 2000 entry of a 40 GAF score by Plaintiff's treating psychiatrist, and the ALJ's reasoning above cites the valid reasons why he discounted the psychiatrist's October 2002 opinion that Plaintiff could not "hold a job at this time." *See id.* at 401. Indeed, Plaintiff does not challenge ALJ Wurm's characterization of the evidence or his basis for discounting the treating psychiatrist's opinion.

As the Tenth Circuit held in affirming a prior decision of this district:

> [A] GAF score of 40 may indicate problems that do not necessarily relate to the ability to hold a job. . . . Thus, standing alone, the GAF score does not evidence an impairment seriously interfering with claimant's ability to work. "While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy." *Howard v. Comm'r of Soc. Sec,* 276 F.3d 235, 241 (6th Cir. 2002) (holding that "ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate"). [The examining physician who determined the GAF score] did not indicate that claimant could not work. His assessment of claimant's GAF score, standing alone, does not undermine, nor is it 'significantly probative' evidence in opposition to, the ALJ's ultimate conclusions concerning the seriousness of claimant's mental status or ability to work. . . .

\* \* \* \* \*

> [I]t is clear from our review of the evidence that the ALJ's
> assessment of claimant's mental RFC was based on his
> consideration of the record as a whole.  What claimant is essentially
> asking is that this court reweigh the evidence relating to his
> depression and anxiety, and to substitute our judgment for that of
> the ALJ, which, of course, we cannot do.

*Lopez v. Barnhart,* 78 Fed.Appx. 675, 678 (10th Cir. 10/16/03) (affirming that portion of the

decision in CIV 02-303 LH/LCS).  Accordingly, I find that ALJ Wurm's residual functional

capacity finding is supported by substantial evidence.

### B.  ALJ Wurm Did Not Err In Relying On The Testimony Of A Vocational Expert For His Phase Two And Three Findings

The second phase of the Step 4 analysis requires an ALJ to make specific findings about

the physical and mental demands of Plaintiff's past relevant work.  The third phase requires an

ALJ to determine whether a claimant can satisfy the demands of her past relevant work given the

phase one and two findings.  *E.g., Doyle,* 331 F.3d at 760-61.

Plaintiff argues that while ALJ Wurm asked preliminary questions of Plaintiff, he erred in

the second and third phases of the Step 4 analysis by not asking questions about the "postural"

and "contact with people" requirements of the food checker position.  *Doc. 11* at 3.  As noted

above, however, the ALJ asked the vocational expert to classify the food checker position and

also to render an opinion whether Plaintiff could return to it given her limitation of working with

the public.  She did so, and ALJ Wurm incorporated that testimony into his findings, which is not

improper.  *See e.g., Doyle,* 331 F.3d at 760-761; *see also Gibson v. Barnhart,* 69 Fed. Appx.

983, 986 (10th Cir. 2003) (relying on *Doyle*).

8

### C.  Remand Is Necessary Regarding Whether The Cashier Position Can Be Considered & Clarification Of The ALJ's Reasoning

### (1) 15-Year Rule Is Not A *Per Se* Prohibition On Considering Past Work

Plaintiff's remaining arguments center around whether ALJ Wurm should have considered the cashier aspect of the food checker position as past relevant work.  Regulation 404.1565(a) provides in pertinent part:

> We consider that your work experience applies when it was done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity.  We ***do not usually*** consider that work you did 15 years or more before the time we are deciding whether you are disabled (or when the disability insured status requirement was last met, if earlier) applies.  A gradual change occurs in most jobs so that after 15 years it is no longer realistic to expect that skills and abilities acquired in a job done then continue to apply.  The 15-year guide is intended to insure that remote work experience is not currently applied.

20 C.F.R. § 404.1565(a) (emphasis added).

Although some decisions appear to apply the 15-year rule as a bright-line cutoff for consideration,[1] neither the wording of the above regulation nor Ruling 82-62 support that view.  Both the regulation and the ruling provide that a job more than fifteen years before the decision is not "usually" relevant.  *See* 20 C.F.R. § 404.1565(a); *Social Security Ruling 82-62,* 1982 WL 31386 *2 (1982).  Although I have not found a Tenth Circuit decision on point, based on the plain wording of the regulation and ruling, I agree with Defendant, and other courts which so hold, that the 15-year rule does not impose a *per se* prescription against considering a job as past relevant

---

[1]  *See Burdine v. Secretary of Health & Human Servs.,* 1988 WL 27534 (6th Cir. 1988) ("Work beyond the fifteen (15) year limit prescribed by the regulations is too remote to be considered"); *Mastroni v. Bowen,* 646 F. Supp. 1032, 1035 (D.D.C. 1986) ("The agency's regulations expressly exclude from the definition of "previous work" any work performed more than 15 years ago.").

work.[2]   However, I do not understand Plaintiff to argue that the 15-year rule is an absolute

preclusion.  Rather, she makes two different but interrelated arguments.

### (2)  Past Work Can Be Segregated Into "Types" Of Work For Consideration Under "Ordinarily Required" Test

Plaintiff argues that it was improper for ALJ Wurm to separate the cashiering and cook

portions of her food service job.  She cites *Vertigan v. Halter,* 260 F.3d 1044 (9th Cir. 2001),

*Eddy v. Massanari,* 180 F. Supp. 2d 1255 (D. Kan. 2002), and *Armstrong v. Sullivan,* 814 F.

Supp. 1364 (W.D. Tex. 1993) in support.  *See Doc. 11* at 4.  As I understand Plaintiff's

argument, she contends that an ALJ can never segregate types of work performed in a particular

past position.  To the extent the decisions she cites stand for that proposition, I am not persuaded

that the Tenth Circuit would adopt it.

Ruling 82-61 provides two different ways to determine whether a claimant can return to

past relevant work.  First, "where the evidence shows that a claimant retains the RFC to perform

the functional demands and job duties of a particular past relevant job as he or she actually

performed it, the claimant should be found to be 'not disabled.'"  *Social Security Ruling 82-61,*

1982 WL 31387 at *2 (1982).  Second, if a "claimant retains the capacity to perform the

functional demands and job duties of the job as ordinarily required by employers throughout the

---

[2]  *See Pickner v. Sullivan,* 985 F.2d 401, 403 (8th Cir. 1993) ("Work performed more than 15 years prior . . . is 'ordinarily' not considered relevant"); *Smith v. Secretary of Health & Human Servs.,* 893 F.2d 106, 109 (6th Cir. 1989) ("The regulation states that the Secretary does not 'usually' consider work beyond the 15-year period to be applicable:  giving the conventional meaning to the word 'usually' means that the Secretary sometimes does look to work done before the 15-year period. . . .  We therefore conclude that the 15-year cutoff of § 404.1565(a) is not mandatory"); *Pfeiffer v. Apfel,* 2001 WL 204831 at *5 (D. Or. 2001) ("Ruling [82-62] makes clear that the 15-year period is not a strict limitation.  Considering that cooking skills are not ones which are generally subject to change, and considering that the past work occurred only two months outside the 15-year period, the ALJ's decision that plaintiff could perform past work of a cook was not in error.").

national economy," which can be ascertained by consulting the Dictionary of Occupational Titles ("DOT"), a claimant should also be found not disabled. *Id.* The second test, therefore, does not necessarily take into consideration all of the job duties actually performed in the past.

> A former job performed in by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be "not disabled."

*Id.*

In *Andrade,* the Tenth Circuit found "no basis upon which to reject [Ruling] 82-61's interpretation of the phrase past relevant work," and concluded accordingly that at Step 4, "the phrase past relevant work includes a claimant's particular past relevant job, as well as the *type* of work claimant performed in the past, as that work is generally performed in the national economy." *Andrade v. Secretary of Health & Human Servs.,* 985 F.2d 1045, 1051 (10th Cir. 1993) (emphasis original). The Tenth Circuit therefore agreed with a decision from this district that found an ALJ did not err in finding a claimant could return to past relevant work as a general contractor, even though the job as he actually performed it also included more strenuous duties such as plumbing and carpentry.

In affirming that ruling, the Tenth Circuit stated that it is claimant's burden to "to demonstrate he cannot return to his former type of work, and not just to his previous job," and "it is not enough to show that plumbing and carpentry were part of the claimant's particular job." *Id.* at 1052. Rather, the claimant would have to show that plumbing and carpentry were "among the

job duties" of a general contractor as the ALJ had defined it using the DOT. *Id.* Thus, under *Andrade,* Step 4 includes both the "as actually performed" and "ordinarily required" tests, and it is not error for an ALJ to consider certain aspects of prior relevant work when utilizing the second test. The two-test approach is still the law in this circuit.[3]

The Kansas decision Plaintiff cites does not discuss *Andrade,* and in any event is distinguishable. There, an insurance salesman who conducted most of his business verbally was going deaf with attendant communication problems. The ALJ found that Plaintiff could use his analytical and problem-solving skills and still earn a substantial salary as an owner/partner in the agency for which he worked. The Kansas district court held it to be error for the ALJ to "deconstruct" the job into "component parts" and recombined the "perks" of the claimant's job to create an "imaginary job" the claimant could perform. *Eddy,* 180 F. Supp. 2d at 1269. For the *Eddy* court, that sort of "deconstruction" was impermissible under ***either*** of the two tests. *Id.* at 1270.

Here, Plaintiff's food service position, by her own testimony consisted of two discrete types of work – food preparation and cashier – and ALJ Wurm considered the second "type" of work. *See Record* at 514 ("What you did as a food service worker? . . . I worked at the Canteen for the tech students . . . I did salads, cashiering."). The ALJ asked the vocational expert to

---

[3]   *See e.g., Avalos v. Barnhart,* 78 Fed. Appx. 668, 673 (10th Cir. 2003) ("The ALJ also considered the demands of plaintiff's past relevant work, which he found (based on her own descriptions) to be beyond her present exertional RFC. However, the VE testified based on the [DOT], that several of plaintiff's past relevant jobs are performed at the light level in the national economy. *See Haddock v. Apfel,* 196 F.3d 1084, 1090 (10th Cir. 1999) (agency accepts DOT's definitions as reliable evidence at step four of functional demands and job duties of claimant's past job as usually performed in national economy); *see also Andrade* . . . (claimant bears burden of proving inability to return to particular former job or to former occupation as generally performed throughout national economy).").

12

"characterize" Plaintiff's past relevant work, and she did so presumably by reference to the DOT. *See id.* at 515.  Ostensibly, then, ALJ Wurm could have made his Step 4 decision on the "ordinarily required" tests.[4]

Nevertheless, I find a remand is necessary because it is unclear from the vocational expert's answers and ALJ Wurm's opinion whether he was deciding Step 4 on the "as actually performed" or the "ordinarily required" test.  Under those circumstances, I am unable to engage in a  meaningful judicial review of his decision.

### (3)  Because Remand Is Warranted, The ALJ Should Also Specifically Consider The Applicability Of Ruling 82-62

Plaintiff also argues that because the only prior work he considered was a job beyond the 15-year mark, Ruling 82-62 requires additional analysis.  It provides in pertinent part:

> Recency refers to the time which has elapsed since the work was performed. A gradual change occurs in most jobs in our national economy so that after 15 years *it is no longer realistic to expect that skills (or proficiencies) and abilities acquired in these jobs continue to apply.* The 15-year guide is intended to insure that remote work experience which could not reasonably be expected to be of current relevance is not applied.
>
> While the regulations provide that a claimant/beneficiary's work experience is usually relevant when the work "was done within the last 15 years," in some cases *worked performed prior to the*

---

[4]   *See O'Dell v. Shalala,* 44 F.3d 855, 859-60 (10th Cir. 1994) ("The vocational expert testified that the position of food preparation supervisor entails the performance of light skilled work. . . .  The [DOT] § 319.137.010, also classifies this work as 'light.'  Although claimant's previous job, as she performed it, may have included cooking duties, there is no evidence that the position of food preparation supervisor generally encompasses such duties.  Claimant, therefore, has not demonstrated her inability to return to her former 'type' of work, as that job is generally performed.  *See Andrade,* 985 F.2d at 1052.  Further, because the vocational expert's opinion was based both on claimant's vocational records and her hearing testimony, we cannot assume that she disregarded claimant's job duties in assessing her former employment as 'light.'  The Secretary's conclusion that claimant could return to her former occupation is supported by substantial evidence and will not be disturbed.").

> *15-year period may be considered as relevant when a continuity*
> *of skills, knowledge, and processes can be established between*
> *such work and the individual's more recent occupations.*

*Social Security Ruling 82-62,* 1982 WL 31386 at *2 (1982) (emphasis added).

While ALJ Wurm cited the wording of the applicable regulation, he concluded that the cashier type work is "a relatively generic job which has remained essentially unchanged." *Record* at 241. He reached his conclusion without identifying the basis for his conclusion and without the benefit of vocational expert testimony. Yet, the regulation and ruling both state that it is not realistic to expect a job to remain unchanged over that long a period of time. *See also e.g., Schroeder v. Chater,* 1996 WL 559638 at * 1 (10th Cir. 1996) ("The fifteen-year cutoff date is used because the Secretary recognizes that the skills and abilities necessary to perform most jobs change over time and that it is unrealistic to expect skills and abilities acquired more than fifteen years prior to adjudication to remain relevant in the modern workplace."). While vocational expert testimony is not required at Step 4, Ruling 82-62 also provides that a decision based on speculation or presumption is not sufficient.

> The file will contain all the pertinent information with respect to the
> medical aspects of the case *as well as the nonmedical facts.*
>
> The explanation of the decision must describe the weight attributed
> to the pertinent medical and *nonmedical factors* in the case and
> reconcile any significant inconsistencies. *Reasonable inferences*
> *may be drawn, but presumptions, speculations and suppositions*
> *must not be used.*

*Social Security Ruling 82-62,* 1982 WL 31386 at *4 (1982) (emphasis added).

Here, the vocational expert characterized cashier-type work as semi-skilled. Without the benefit of expert testimony or further explanation, ALJ Wurm's conclusion that the cashier

position has remained unchanged over fifteen years is simply speculative and may be incorrect.

Furthermore, since ALJ Wurm did not cite Ruling 82-62, I have to conclude that he did not consider it at all, and in particular the second paragraph above.  By its plain language, that paragraph would appear to support Plaintiff's position that before considering work beyond the 15-year mark, ALJ Wurm must have first compared the cashier work to Plaintiff's more recent work.  There is a dearth of law in this area.[5]  The decisions I have found do not necessarily support Plaintiff's position.  *Compare Van Wormer v. Secretary of Health & Human Servs.,* 1989 WL 54129 at *5 (6th Cir. 1989) (Allen, D.J., concurring) ("the Secretary has the burden of establishing a continuity of skills . . . to justify consideration of work performed outside the fifteen year period."); *with Khuu v. Chater,* 12 F. Supp. 2d 1028, 1033-34 (C.D. Cal. 1997) (rejecting argument that Ruling 82-62 requires Commissioner to establish continuity before considering a sixteen-year old job because:  (1) "SSR 82-62 neither states nor implies that the Commissioner has the burden to establish continuity or that continuity must be established in each and every case;" (2) a claimant has the burden of proof at Step 4; and (3) in any event, the vocational expert called to testify in that case characterized the past work a light and low-level semi-skilled and testified that the work had not "changed significantly over the past 19 years."), *and Hatgy v. Commissioner of Social Security Admin.,* 2000 WL 140467 at **5-6 (D. Or. 2000) (ALJ did apply a continuity analysis; court rejected claimant's assertion that an ALJ can only do so where the past work was skilled, but did not "consider whether, as a factual matter, the ALJ's

---

[5]  Although the Supreme Court (and Tenth Circuit) have held that a prior job need not presently exist to be considered at Step 4, these decisions did not involve past work that was beyond the fifteen-year mark.  *See Barnhart v. Thomas,* ___ U.S. ___, ___ S. Ct. ___ (October 14, 2003); *Andrade,* 985 F.3d at 1051.

[continuity] analysis is correct").

Given the lack of authority on the subject, the plain wording of Ruling 82-62, ALJ Wurm's failure to discuss the ruling, and the necessity for remand in the first instance, I also find that this issue should be addressed on remand as well.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion is GRANTED IN PART, and the matter is remanded to the Commissioner for further proceedings at Step 4 and, if necessary, Step 5. A final order will enter concurrently herewith.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by consent.